IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

GABRIELLA JARROTT,
*As parent of her minor children, D.J. and*
*N.J., and as personal representative of*
*the wrongful death estate of Darian Jarrott,*

      Plaintiff,

      vs.                                            2:22-cv-00430-KWR-JHR

UNITED STATES OF AMERICA,

      Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court upon Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction (**Doc. 24**). Having reviewed the parties' pleadings and applicable law, the Court finds that Defendant's motion is well-taken and therefore, is **GRANTED**.

Officer Darian Jarrott was shot and killed by Omar Cueva during a traffic stop. Plaintiff asserts that Defendant was negligent, resulting in Omar Cueva killing Officer Jarrott. Doc. 3 at ¶ 32.

The Federal Tort Claims Act ("FTCA") waives the United States' sovereign immunity for certain tort claims. However, Defendant asserts that sovereign immunity has not been waived here due to the "discretionary function" exception to the waiver of sovereign immunity under 28 U.S.C. § 2680(a). Plaintiff disagrees. Although Plaintiff does not contest whether the allegations in this case fall under the discretionary function exception, she asserts that exception is overridden by another statutory subsection, the law enforcement proviso under 28 U.S.C. § 2680(h). Under the "law enforcement proviso", sovereign immunity is waived under 28 U.S.C. § 2680(h) for law

enforcement officers who commit an intentional tort. The Court agrees with Defendant and concludes that the discretionary function exception still applies even if the law enforcement proviso is also applicable, therefore sovereign immunity is not waived. The Court will dismiss this case without prejudice for lack of subject matter jurisdiction.

## BACKGROUND

**I.      Plaintiff's allegations.**

On June 27, 2022, Plaintiff filed an Amended Complaint.  Doc. 3.  The allegations in the Amended Complaint are as follows.

In January and February 2021, agents with Homeland Security Investigations ("HSI"), a division of the Department of Homeland Security, were investigating a suspected drug trafficker, Omar Cueva.  Doc. 3 at 3, ¶ 8.  On or about January 28, 2021, an undercover HSI agent purchased a language quantity of methamphetamine from Cueva.  *Id.*  at ¶ 10.  During that purchase, Cueva was in possession of an "AK-47 style semi-automatic rifle." *Id.*  at ¶ 10.  Although the agent tried to buy the weapon from Cueva, Cueva would not sell the rifle, and told him that he needed it for his protection.  *Id.*  Cueva stated that if he got caught, he would not go back to jail, implying that he would try to shoot his way out of an arrest.  *Id.* Cueva had an extensive criminal record and was known to have a violent history.  *Id.* at ¶ 11.

Using undercover agents and a confidential informant, HSI agents set up another transaction with Cueva on February 4, 2021.  *Id.* at ¶ 12.  The agents chose not to arrest Cueva at the purchase to protect the identity of the confidential informant.  Instead, agents wanted the New Mexico State Police to pull over Cueva on a pretextual traffic stop as he travelled from Deming to Las Cruces.  *Id.* at ¶ 13.  Agents held a briefing on the morning of February 4, 2021 to prepare for the operation.  Officer Jarrott was not invited to that briefing.  *Id*. at 14.

On February 4, 2021, Officer Jarrott's supervisor, NMSP Sgt. Mark Madrid, was at a training. Sgt. Madrid communicated with the HSI agents that day regarding Cueva. Sgt. Madrid testified that he was not told by the agents about Cueva's history or the extreme danger he posed to a law enforcement officer who might try to apprehend him. *Id.* at ¶16.

HSI agents Matt Rodriguez and Hector Huerta served as team leader and supervisor. *Id.* at ¶ 17. Sgt. Madrid stated that he asked them about Cueva, but he was only told that Cueva might be smuggling drugs. *Id.* at ¶ 18. HSI withheld the information known about Cueva, including his dangerousness, and his stated refusal to be apprehended and intent to shoot his way out of any attempted arrest. *Id.* at ¶ 19. HSI failed to advise Officer Jarrott or Sgt. Madrid of Cueva's criminal history, that he was considered high risk, that he was described as "paranoid" by a confidential informant, or that Cueva stated he intended to shoot his way out of an encounter with law enforcement rather than be apprehended. *Id.* at ¶ 20.

HSI assembled a special response team which was on Interstate 10 near Deming on February 4, 2021. *Id.* at ¶ 21. The special response team was driving an armored vehicle, wearing tactical and bulletproof equipment, and was accompanied by a medic. Officer Jarrott was not told the special response team was trailing Cueva. *Id.*

At approximately noon on February 4, 2021, Officer Jarrott saw a white pickup truck matching the description Sgt. Madrid had given him. Officer Jarrott pulled over the truck, which was driven by Cueva. *Id.* at ¶ 22. Officer Jarrott was alone when he pulled over Mr. Cueva. Unaware of the danger he was in, Officer Jarrott approached Cueva as he would a routine traffic stop. He did not have his weapon drawn, and he did not shout commands at Cueva. *Id.* at ¶¶ 23, 24. Officer Jarrott approached the vehicle from the passenger side and was conversing with Cueva for a couple minutes through the passenger window of the truck. He then asked Cueva to step out

of the vehicle and meet him behind the truck bed. *Id.* at ¶ 25. Cueva emerged from the vehicle with a "semi-automatic rifle," and shot and killed Officer Jarrott. *Id.* at ¶ 26.

In her amended complaint, Plaintiff asserts a (1) wrongful death claim, and (2) a loss of consortium claim. She asserted that Defendant's "negligence and/or recklessness resulted in Omar Cueva killing Officer Jarrott." *Id.* at ¶ 32.

## II. Plaintiff's SF-95 administrative claims.

Plaintiff filed two SF-95 administrative claims with the Department of Homeland Security. *See* Doc. 24-1, Ex. A; Doc. 24-2, Ex. B. On or about April 20, 2021, the U.S. Department of Homeland Security ("DHS") received an SF-95 administrative claim from "New Mexico State Police Officer Darian Jarrott, Deceased, c/o Gabriella Jarrott, Personal Representative." Doc. 24-1, Ex. A, Box. 2. On or about May 4, 2021, DHS received a second identical SF-95 claim. Doc. 24-2, Ex. B.

In the SF-95 claims, Plaintiff stated:

> On or about February 4, 2021, while on duty in his role as an officer for the New Mexico State Police ("NMSP"), and upon direction of his superiors, Darian Jarrott was assisting the U.S. Department of Homeland Security ("HSI") with an investigation. The details of the investigation were not disclosed to Officer Jarrott. As part of that investigation, Darian Jarrott was instructed by HSI and NMSP to create a pretext and initiate a traffic stop of Omar Felix Cueva, which he did on the basis of Cueva's window tint. Officer Jarrott was not told Cueva was known to be an armed and violent felon, that Cueva was in the process of transporting a large quantity of illegal drugs, nor that Cueva was desperate not to be arrested. During the traffic stop, Cueva shot Officer Jarrott multiple times and killed him.
>
> HSI and NMSP knowingly sent Officer Jarrott into danger without suitable backup, and completely failed to apprise Officer Jarrott of any details of the investigation or suspect, including but not limited to Cueva's violent criminal history. HSI and NMSP's omission of the extreme danger this investigation and interaction with Cueva brought was a direct cause of Mr. Jarrott's death. Mr. Jarrott's constitutional rights were violated, and various torts were committed by HSI and NMSP.

4

Doc. 24-1, Ex. A at 4; Doc. 24-2, Ex. B at 4.  In box 12 of the SF-95 forms, claimants are instructed to list the amount of their claim.  There are separate boxes for property damage, personal injury, and wrongful death.  Plaintiff left the "personal injury" box blank, and in the wrongful death box, claimed $50,000,000.  Doc. 24 at 5.  DHS denied both claims.  Doc. 24 at 5.

## LEGAL STANDARD

Defendant asserts sovereign immunity and moves to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1).  Where a defendant makes a facial attack on the complaint, the Court accepts the allegations of the complaint as true. *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995).

Where a defendant makes a factual attack, the plaintiff bears the burden of presenting evidence sufficient to establish the Court's subject matter jurisdiction by a preponderance of the evidence. *See United States ex rel. Hafter D.O. v. Spectrum Emerg. Care, Inc.*, 190 F.3d 1156, 1160 n.5 (10th Cir. 1999).  The Court may go beyond the complaint and consider evidence presented by the parties.  *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995).

Plaintiff did not object to the Court considering this motion under Fed. R. Civ. P. 12(b)(1) or 12(b)(6).  Neither party requested the Court convert this matter under Rule 56. Rather, the relevant jurisdictional facts appear to be undisputed, and Plaintiff does not object to the Court considering the SF 95 administrative claims she filed with Defendant.

## DISCUSSION

**I.  Discretionary function exception to the waiver of sovereign immunity bars the claims in this case.**

    **A.  The Discretionary function exception under 28 U.S.C. § 2680(a) applies to this case.**

5

Defendant argues that the discretionary function exception to the sovereign immunity waiver bars the claims in this case. The Court agrees.

"The concept of sovereign immunity means that the United States cannot be sued without its consent." *Iowa Tribe of Kan. & Neb. v. Salazar*, 607 F.3d 1225, 1232 (10th Cir. 2010) (quotations omitted). The FTCA provides "a limited waiver of [the United States'] sovereign immunity ... for certain torts of federal employees acting within the scope of their employment." *United States v. Orleans*, 425 U.S. 807, 813, 96 S.Ct. 1971, 48 L.Ed.2d 390 (1976); *see* 28 U.S.C. § 1346(b)(1). It includes exceptions to this limited waiver. *See* 28 U.S.C. § 2680. "When an exception applies, sovereign immunity remains, and federal courts lack jurisdiction." *Garling v. U.S. EPA*, 849 F.3d 1289, 1294 (10th Cir. 2017).

Under the FTCA's discretionary function exception, the United States does not waive its immunity for claims "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). "[T]he purpose of the exception is to prevent judicial second-guessing of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." *United States v. Gaubert*, 499 U.S. 315, 323, 111 S.Ct. 1267, 113 L.Ed.2d 335 (1991) (quotations omitted). "When determining whether government conduct falls within the discretionary function exception, courts apply the two-part test set forth in *Berkovitz v. United States*, 486 U.S. 531, 536-37, 108 S.Ct. 1954, 100 L.Ed.2d 531 (1988)." *Martinez v. United States*, 822 F. App'x 671, 676 (10th Cir. 2020), *citing Garling*, 849 F.3d at 1295.

"Because the discretionary function exception is jurisdictional, the burden is on [the plaintiff] to prove that it does not apply." *Hardscrabble Ranch, L.L.C. v. United States*, 840 F.3d

6

1216, 1220 (10th Cir. 2016); *accord Aragon v. United States*, 146 F.3d 819, 823 (10th Cir. 1998) ("The discretionary function exception poses a jurisdictional prerequisite to suit, which the plaintiff must ultimately meet as part of his overall burden to establish subject matter jurisdiction." (quotations omitted) ). If the plaintiff fails to make the necessary showing under *Berkovitz*, "[t]he [discretionary function] exception applies even if the governmental employees were negligent." *Aragon*, 146 F.3d at 822, *quoted in Martinez v. United States*, 822 F. App'x 671, 676–77 (10th Cir. 2020). "Because the exception applies whether or not the discretion involved was abused, it is irrelevant whether the government employees were negligent." *Elder v. United States*, 312 F.3d 1172, 1176 (10th Cir. 2002) (internal quotation marks omitted). (brackets and internal question marks omitted).

To determine whether the discretionary function exception applies, the Court applies the *Berkowtiz* test: (1) whether the conduct is discretionary, *i.e.*, it involves an element of judgment or choice, and (2) whether it requires the exercise of judgment based on considerations of policy. *Awad v. United States*, 807 F. App'x 876, 878–79 (10th Cir. 2020), *Berkovitz v. United States*, 486 U.S. 531, 536, 108 S.Ct. 1954, 100 L.Ed.2d 531 (1988). "If both prongs of the *Berkovitz* test are satisfied, the discretionary function exception applies, the court lacks jurisdiction, and the claim is barred." *Id.*

Here, Defendant asserts that the discretionary function applies under this test, and Plaintiff does not contest Defendant's application of the *Berkovitz* test. Rather, Plaintiff asserts that the discretionary function exception to the sovereign immunity waiver is overridden by another subsection of § 2680. As explained below, the Court disagrees with Plaintiff's argument. As explained below, Plaintiff does not contest the application of the *Berkovitz* test here, and the Court concludes that the discretionary function exception to the sovereign immunity waiver applies.

*Hardscrabble Ranch, L.L.C. v. United States*, 840 F.3d 1216, 1220 (10th Cir. 2016) ("Because the discretionary function exception is jurisdictional, the burden is on [the plaintiff] to prove that it does not apply.").

As to the first prong of the *Berkowtiz* test, it is undisputed that the conduct was discretionary, *i.e.*, it involved an element of judgment or choice. Plaintiff has not pointed to any statute, rule, or policy which mandated that the HSI agents act in a certain way. *Berkowtiz*, 486 U.S. at 536; *Sydnes v. United States*, 523 F.3d 1179, 1185 (10th Cir. 2008) (noting that "the burden under our case law to present evidence of a discretion-constraining regulation or policy resides with the plaintiff.").

Moreover, the HSI agents' choice of how to investigate, approach, arrest, and prosecute Omar Cueva is a discretionary decision. "As a general matter, law enforcement decision surrounding the investigation and prosecution of crimes, including whether or not to disclose information regarding potential threats, involve the exercise of discretion." *JGE v. United States*, 772 F. App'x 608, 612 (10th Cir. 2019); *see also Linder v. United States*, 937 F.3d 1087, 1091 (7th Cir. 2019) ("No one can doubt that the investigation of (potential) crimes" is a "discretion-laden subject[ ]."); *Hart v. U.S.*, 630 F.3d 1085, 1090 (8th Cir. 2011) ("We readily conclude a federal law enforcement officer's on-the-spot decisions concerning how to effectuate an arrest ... fall within the discretionary function exception to the FTCA absent a specific mandatory directive to the contrary."); *Mesa v. U.S.*, 123 F.3d 1435, 1438 (11th Cir. 1997) (holding the manner in which federal law enforcement agents investigated and identified suspect and executed an arrest warrant involved an element of judgment or choice).

In addition, "the decision to use informants is a discretionary function" in which the government must take into account that "informants do not come free of criminal history." *JGE*

*through Tasso v. United States*, 772 F. App'x 608, 612 (10th Cir. 2019), *quoting Ostera v. United States*, 769 F.2d 716, 718 (11th Cir. 1985) (per curiam).

Here, the federal agents' plan to have the New Mexico State Police develop probable cause and then initiate a traffic stop was intended to bring about the apprehension of Omar Cueva while protecting the confidential informant. As Plaintiff has not pointed to any statute, rule, or policy mandating a course of action, the Court concludes that the HSI agent's conduct was discretionary.

As to the second prong of the *Berkovitz* test, it is undisputed that the conduct involved the exercise of judgment based on considerations of policy. "For a complaint to survive a motion to dismiss, it must allege facts which would support a finding that the challenged actions are not the kind of conduct that can be said to be grounded in the policy of the regulatory regime." *United States v. Gaubert*, 499 U.S. 314, 324-25 (1991). The Court "must presume that a government agency's acts are grounded in policy when no statute, regulation, or policy sets forth a required course of conduct; the challenger must allege facts showing otherwise." *Ball v. United States*, 967 F.3d 1072, 1079 (10th Cir. 2020). As Plaintiff has not argued that any statute, regulation, or policy sets forth the required course of conduct, the Court presumes that the Defendant's acts are grounded in policy. *Id.*

Generally, law enforcement decisions regarding how best to investigate, prosecute, and apprehend a suspect are policy-based decisions. Here, HSI developed a tactical plan for the New Mexico State Police to initiate a traffic stop to bring about the apprehension of Omar Cueva, while protecting the confidential informant. It is undisputed here that the HSI agent's decisions involving the undercover operation and the apprehension of Omar Cueva involved policy considerations. *Awad*, 807 F. App'x at 881; *see also Suter v. United States*, 441 F.3d 306, 311-12 (4th Cir. 2006) (holding that an undercover FBI agent's discretionary participation in the crimes

9

the FBI was investigating was susceptible to a policy analysis); *Deuser v. Vecera*, 139 F.3d 1190, 1195-96 (8th Cir. 1998) (holding that National Park Service rangers' discretionary decisions about arresting and releasing the plaintiff were rooted in policy concerns about the safety of other parkgoers); *Mesa v. United States*, 123 F.3d 1435, 1438 (11th Cir. 1997) (holding that "[t]he decision as to how to locate and identify the subject of an arrest warrant prior to service of the warrant is susceptible to policy analysis" involving "such factors as the potential threat the subject poses to public safety and the likelihood that the subject may destroy evidence"); *Hart v. United States*, 630 F.3d 1085, 1090 (8th Cir. 2011) ("We readily conclude a federal law enforcement officer's on-the-spot decisions concerning how to effectuate an arrest—including how best to restrain, supervise, control or trust an arrestee—fall within the discretionary function exception to the FTCA absent a specific mandatory directive to the contrary.").

Therefore, the Court concludes that the *Berkovitz* test has been satisfied, and the discretionary function exception to the waiver of sovereign immunity applies.

**B.     The law enforcement proviso under 28 U.S.C. § 2680(h) does not override the discretionary function exception, and the two statutory subsections can be read harmoniously together.**

Plaintiff asserts that sovereign immunity has been waived under a separate provision, the law enforcement proviso under 28 U.S.C. § 2680(h), which she asserts overrides the discretionary function provision under § 2680(a), citing *Nguyen v. United States*, 556 F.3d 1244 (11th Cir. 2009). The Court disagrees with Plaintiff.

Under 28 U.S.C. § 2680(h), the "intentional tort" exception to the waiver of sovereign immunity retains the United States' immunity, and thus bars FTCA actions for "[a]ny claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process,

libel, slander, misrepresentation, deceit, or interference with contract rights." *Id.* However, the "law enforcement proviso" in the same subsection provides an exception to the exception, and therefore waives sovereign immunity for certain intentional torts by law enforcement officers:

> *Provided*, That, with regard to acts or omissions of investigative or law enforcement officers of the United States Government, the provisions of this chapter and section 1346(b) of this title shall apply to any claim arising ... out of assault, battery, false imprisonment, false arrest, abuse of process, or malicious prosecution…

28 U.S.C. § 2680(h) (sic).

The majority of circuits have concluded that the law enforcement provision does not override the discretionary function exception to the sovereign immunity waiver. That is, if the discretionary function applies under § 2680(a), the law enforcement proviso does not necessarily waive sovereign immunity. *See Joiner v. United States*, 955 F.3d 399, 406 (5th Cir. 2020) (although plaintiff "invoked the law enforcement proviso here, that does not automatically trump the discretionary function exception…"); *Campos v. United States*, 888 F.3d 724, 731 (5th Cir. 2018) ("[B]oth the proviso and the discretionary function exception must be read together. In other words, one does not moot the other when both cover a fact pattern.") (internal citation omitted); *see also Linder v. United States*, 937 F.3d 1087, 1089 (7th Cir. 2019); *Medina v. United States*, 259 F.3d 220, 224–26 (4th Cir. 2001); *Gasho v. United States*, 39 F.3d 1420, 1434–35 (9th Cir. 1994) ("If [the United States] can show that the tortious conduct involves a 'discretionary function,' a plaintiff cannot maintain an FTCA claim, even if the discretionary act constitutes an intentional tort under § 2680(h)."); *Gray v. Bell*, 712 F.2d 490, 507–08 (D.C. Cir. 1983); *Caban v. United States*, 671 F.2d 1230, 1234 (2d Cir. 1982); *Pooler v. United States*, 787 F.2d 868, 871-72 (3d Cir. 1986), *abrogated on other grounds by Millbrook v. United States*, 569 U.S. 50 (2013); *but*

11

*see Nguyen v. United States*, 556 F.3d 1244 (11th Cir. 2009).[1] Although the Tenth Circuit has not decided this issue, a district court in this circuit has followed the majority. *Ramirez v. Reddish*, 2020 WL 1955366, at *27 (D. Utah. 2020) (Ebel, J.).

The two subsections of § 2680 are not in conflict and can be read harmoniously. The law enforcement proviso says that "the provisions of this chapter and section 1346(b) of this title *shall apply* to any claim" (emphasis added) for assault and battery arising out of a law enforcement officer's acts. § 2680(h). "'[T]his chapter' includes § 2680(a), the discretionary-function exemption. This means that *discretionary* acts by law-enforcement personnel remain outside the FTCA by virtue of § 2680(a), even though the proviso allows other" assault and battery suits. *Linder v. United States*, 937 F.3d 1087, 1089 (7th Cir. 2019). Therefore, the plain language of § 2680(h) directs the courts to consider whether the discretionary function exception under § 2680(a) applies. To hold otherwise would render § 2680(h)'s language referring to "the provisions of this chapter" mere surplusage. *Linder*, 937 F.3d at 1089. Moreover, the law enforcement proviso isn't rendered ineffective by the application of the discretionary function exception under § 2680(a). The intentional torts "listed under the proviso… may be committed without any exercise of a discretionary function" and would in those circumstances rise to liability. *Gray*, 712 F.2d at 507. As explained above, Plaintiff does not dispute that Defendant's acts were discretionary under the *Berkovitz* test. Therefore, the Court concludes that the discretionary function exception to the waiver of sovereign immunity under § 2680(a) bars the claims asserted in this case.

## II.     Loss of Consortium claim is also barred under sovereign immunity.

---

[1] The Tenth and Sixth Circuits have not addressed this issue. *Mynatt v. United States*, 45 F.4th 889, 895 (6th Cir. 2022); *Garling v. United States Env't Prot. Agency*, 849 F.3d 1289, 1297–98 n.5 (10th Cir. 2017).

Defendant argued that sovereign immunity was not waived for the claims asserted in the complaint, which included not only a wrongful death claim, but a loss of consortium claim. The same discretionary function analysis above applies here to the loss of consortium claim. Therefore, the Court concludes that Plaintiff's loss of consortium claim is also excepted from the waiver of sovereign immunity, for the reasons stated above.

Alternatively, only to the extent the discretionary function exception to the waiver of sovereign immunity does not apply to the loss of consortium claim, the Court would conclude that Plaintiff failed to exhaust her administrative remedies as to the loss of consortium claim.

Defendant asserts that Plaintiff failed to adequately notify it of her loss of consortium claims on the SF-95 administrative claims she filed. The Court agrees. "The jurisdictional statute, 28 U.S.C. § 2675(a), requires that claims for damages against the government [first] be presented to the appropriate federal agency by filing (1) a written statement sufficiently describing the injury to enable the agency to begin its own investigation, and (2) a sum certain damages claim." *Est. of Trentadue ex rel. Aguilar v. United States*, 397 F.3d 840, 852 (10th Cir. 2005). The purpose of this requirement is "to give the agency notice of the claim, an opportunity to investigate, and a chance to settle the claim prior to litigation." *Lopez v. United States*, 823 F.3d 970, 977 (10th Cir. 2016).

"A claim is properly presented to an agency only if the language of the claim serves due notice that the agency should investigate the possibility of particular (potentially tortious) conduct." *Barnes v. United* States, 707 Fed. Appx. 512, 516 (10th Cir. 2017) (internal quotation omitted). However, the notice requirement "should not be interpreted inflexibly." *Trentadue*, 397 F.3d at 852. "Several courts in this jurisdiction have ... interpreted the provision to require notice

of the facts and circumstances underlying a claim rather than the exact grounds upon which plaintiff seeks to hold the government liable." *Id.*

Moreover, "[n]o statement of legal theories is required… only facts plus a demand for money." *Lopez*, 823 F.3d at 977. The form must give notice "sufficient to warrant [government] investigation of each claim." *Haceesa v. U.S.*, 309 F.3d 722, 734 (10th Cir. 2002). While this standard is flexible, "it is not the government's obligation to cast about in the wilderness for every possible source of liability lurking in an administrative claim; rather, the language of the claim itself must serve as a competent guide that, at very least, points the agency to the correct areas of inquiry." *Benally v. United States*, No. 13-CV-0604-MV-SMV, 2016 WL 3200125, at *4 (D.N.M. May 20, 2016).

"Loss of consortium is a type of personal injury damage because damages for consortium are damages for the plaintiff's emotional distress due to the harm to a sufficiently close relationship." *Thompson v. City of Albuquerque*, 2017-NMSC-021, ¶ 8, 397 P.3d 1279 (internal quotation marks, and citations omitted). This includes the value of the loss of the spouse's "love, care, society, companionship, and the like." *State Farm Mut. Auto. Ins. Co. v. Luebbers,* 2005-NMCA-112, ¶ 42, 138 N.M. 289, 119 P.3d 169; *Wachocki*, 2011-NMSC-039, ¶ 5. ("A loss-of-consortium claimant must demonstrate two elements in order to recover damages." The first element is that the claimant and the injured party shared a sufficiently close relationship. . . . The second element is a duty of care."). In other words, loss of consortium damages are separate from wrongful death damages. *See* New Mexico Uniform Jury Instructions (2020) 13-1830 (use notes and committee commentary for Wrongful Death damages); 13-1810A (loss of consortium claim instruction, use notes, and commentary), 13-1810B (loss of consortium damages instruction). Loss

of consortium damages for a spouse may not be recovered in a wrongful death cause of action, but must be sought in a separate claim. *Id.*

The parties appear to agree that the Court may consider the SF-95 claims attached to the briefing. The Court will do so under Fed. R. Civ. P. 12(b)(1). Although Plaintiff filed two identical SF-95 claim forms, both claims were filed in the name of "New Mexico State Police Officer Darian Jarrott, Deceased, c/o Gabriella Jarrott, Personal Representative." Doc. 24-1 at 2; Doc. 24-2 at 2. To the extent Plaintiff was the claimant, it appears to have been in her capacity as personal representative of Officer Jarrott's estate. Plaintiff did not file a claim form in her name. *See* Doc. 30-1, Ex. 1. *See Haceesa v. United States,* 309 F.3d 722, 734 (10th Cir. 2002) (in New Mexico loss of consortium claim associated with wrongful death claim, "the spouse of the decedent must bring a separate cause of action in his or her individual capacity to recover such damages," and cannot bring those claims as personal representative). Even assuming Plaintiff filed the claim forms in her own name and not on behalf of the estate Plaintiff did not describe the injuries she or her children suffered, but described the injuries and tortious acts suffered by her husband. The facts asserted in the notice would alert the United States to a wrongful death claim on behalf of Officer Jarrott, but not to a loss of consortium claim. Moreover, Plaintiff did not assert a sum of personal injury damages, but only asserted wrongful death damages. Therefore, the Court concludes that Plaintiff did not adequately notify the Defendant of her loss of consortium claim, and the Court concludes that Plaintiff did not exhaust her administrative remedies.

## CONCLUSION

The Court concludes that under the Federal Tort Claims Act, sovereign immunity has not been waived for the claims asserted in this case. Therefore, the Court lacks subject matter jurisdiction and dismisses this case without prejudice.

**IT IS THEREFORE ORDERED** that Defendant's Motion to Dismiss a Claim for Lack of Subject Matter Jurisdiction **(Doc. 24)** is hereby **GRANTED** for the reasons described in this Memorandum Opinion and Order; and

**IT IS FURTHER ORDERED** that this case is **DISMISSED WITHOUT PREJUDICE**.

_____
**KEA RIGGS
UNITED STATES DISTRICT JUDGE**